UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

SHANE LYONS,

    Plaintiff,

v.

JEREMY HANSHAW, Deputy Jailer,
and JOE BURCHETT, Jailer,

    Defendants.

No. 0:12-CV-104-HRW-REW

RECOMMENDED DISPOSITION[1]

\*\*\* \*\*\* \*\*\* \*\*\*

The Court considers Defendants' motion for dismissal or, alternatively, for summary judgment. DE #33 (Motion). After Defendants filed their motion, *pro se*[2] Plaintiff tendered an ambiguous, 1-sentence letter to the Court, which the Court construed as an offer of evidence or support for Plaintiff's claims, perhaps in response to Defendants' motion. DE #36 (Order); DE #34 (Letter). Defendants subsequently replied, contending that Plaintiff's letter is hearsay and conclusory. DE #37 (Reply).

The Court **RECOMMENDS** that the District Court **CONSTRUE** Defendants' motion to dismiss (DE #33) as a motion for judgment on the pleadings, **GRANT** Defendants' motion for judgment on the pleadings as to Lyons's claims for verbal abuse and officer intimidation (DE #33) and **DISMISS** those claims **WITH PREJUDICE**, and **DENY** Defendants' motion for judgment on the pleadings as to Lyons's allegation that

---

[1] The Court issues this Recommended Disposition pursuant to the District Judge's referral. DE #17 (Order).
[2] The Court evaluates a complaint by a *pro se* plaintiff under a relatively more lenient standard. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

1

Hanshaw ordered another inmate to attack him (DE #33).  However, the Court further **RECOMMENDS GRANTING** Defendants' motion for summary judgment on such claim against Hanshaw and **DISMISSING** the claim **WITHOUT PREJUDICE** for failure to exhaust (DE #33). On this record, judgment as a matter of law is appropriate as to all claims, though for substantively and procedurally different reasons.

I.     **Relevant Factual and Procedural Background**[3]

On December 3,[4] 2012, Plaintiff, Shane Lyons, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against the Boyd County Detention Center; Jeremy Hanshaw and Joe Burchett, deputy jailers at the Boyd County Detention Center.  DE #1 (Complaint). Following a preliminary review of the Complaint, District Judge Wilhoit dismissed all claims against the Boyd County Detention Center and directed service on Defendants Hanshaw and Burchett. DE #8 (Order) at 1-2.  Defendants Hanshaw and Burchett answered on February 8, 2013. DE #16 (Answer).[5]

---

[3] Under the relevant standard, the Court discusses the facts in favor of Lyons, the non-movant. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (citation and internal quotation marks omitted).

[4] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam). Here, Lyons affirmed under penalty of perjury that he executed and mailed the Complaint, per prison mail, on December 3, 2012. DE #1 (Complaint) at 16.

[5] The Complaint does not, on its face, state the capacity in which Plaintiff sues Defendants. Indeed, the first mention of an official capacity claim appears in Defendants' answer. *See* DE #16 (Answer). Defendants' pending motion generally defends both Defendants in both their individual and official capacities, though does not raise any immunity argument.

The Sixth Circuit requires a plaintiff to state a defendant's capacity to suit. *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989) ("[T]he face of a complaint must indicate whether a plaintiff seeks to recover damages from defendants directly, or to hold the state responsible for the conduct of its employees.) (citation omitted). If a complaint does not specify capacity, the Court construes the claims as brought against a defendant in an

2

In the scattershot and, at times, illegible Complaint, Plaintiff alleges that Defendants intimidated him, verbally abused him, and (as to Hanshaw) ordered other inmates to inflict bodily harm on him. DE #1 (Complaint). Plaintiff does not label his constitutional claims. Lyons indicates that, at the time of filing, he was a pretrial detainee, *id.* at 1 (indicating pretrial detainee status), and the Court thus construes the claims as arising under the Fourteenth Amendment's due process protection against cruel and unusual punishment. *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003).[6] Lyons presents his claims in narrative fashion. The Court surmises that, at some point in late summer or early fall of 2012, Lyons was booked into the Boyd County Detention Center. DE #1 (Complaint) at 7.[7] Plaintiff generally complains about his treatment on that date, including being "forced to stay hours outside in the 'rec yard'" and having to "eat off the ground." *Id.* at 7. At some point, officers took Plaintiff to King's Daughters hospital for medical attention based on Plaintiff's self-reported claim of either lung cancer or TB. *Id.* Lyons alleges that, during his stay at the hospital, Hanshaw violated doctor's orders to

---

official capacity. *Northcott v. Plunkett*, 42 Fed. App'x 795, 796 (6th Cir. 2002) (citing *Wells*). Courts construe official capacity claims brought against an official of a governmental entity as brought against the governmental entity itself. *Will v. Mich. Dep't of State Police*, 109 S. Ct. 2304, 2312 (1989). However, jails are not "persons" subject to suit under § 1983. *Marbry v. Correctional Med. Serv.*, 238 F.3d 422 (6th Cir. 2000). Thus, while a court can construe a claim against a jail as against the county itself, as Judge Wilhoit noted, absent any allegations that Boyd County or any of its policies are implicated in Plaintiff's Complaint, such claims are subject to dismissal for failure to state a claim. DE #8 (Order) (citing *Marbry*). Here, however, in light of Defendants' treatment of the issue, the Court does not rely on capacity and any potential immunity in resolving Plaintiff's claims and does not address the issue further.

[6] Defendants construe the claims as arising under the Eighth Amendment, DE #33-1 (Memorandum), but the "Eighth Amendment does not apply to pretrial detainees." *Weaver*, 340 F.3d at 410 (citing *Roberts v. City of Troy*, 737 F.2d 720, 723 (6th Cir. 1985)).

[7] The cited page numbers correspond to ECF pagination.

remain outside the room, engaged in personal conversation, and made "derogatory comments" that Lyons found offensive. *Id.*

The precise timeline of events is unclear, but ultimately the hospital released Lyons and he returned to the Boyd County Detention Center. Plaintiff contends that on or about October 27, Hanshaw entered Lyons's cell and ordered Lyons to take his medication. When Lyons refused, Hanshaw forcibly removed Lyons from his cell and took him to "D-block," where Hansahw allegedly threatened Lyons and stated that Hanshaw "could not wait to have [Lyons] ass raped." *Id.* at 8. Plaintiff further alleges that, between October 27 and November 11, Hanshaw subjected Lyons to general negative comments and covered up Lyons's cell window to obstruct his view. To the extent Lyons attempts to describe a conversation between Hanshaw and another inmate, Cris Woodle, about an alleged plot to inflict harm upon Lyons, such statements are illegible due to poor photocopy quality. *See id.* at 8-9.

The critical factual allegations appear in Lyons's depiction of November 11 and November 14. Lyons contends that, while he was alone in the recreation yard on November 11, Hanshaw ordered guards to release inmates from cell 138 into the yard. *Id.* at 3. As inmate Cris Woodle entered the recreation area, Hanshaw allegedly spoke to Woodle. Lyons asserts that, following this conversation, Woodle approached Lyons and stated, "Why you fucking with my homeboy Hanshaw?" Woodle then supposedly warned Lyons to "get ready to fight because he [Woodle] was about to blast [Lyons]." Woodle began to fight, hitting Lyons in his ribs, lip, and kidney area. *Id.* Lyons further contends that, following the fight, Woodle threatened to kill Lyons if he gave Hanshaw any further problems. *Id.* Plaintiff indicates that he reported the incident to Captain Guzman,

although Guzman allegedly advised that, due to a lack of audio to pair with yard video, there was "no since [*sic*] in pursuing" the matter.

Finally, Lyons alleges that, on November 14, Burchett entered Lyons's cell with mace and questioned Lyons about a scratched tray. *Id.* at 5. When Lyons denied knowledge of the incident, Burchett allegedly "aggressively" repeated, "What, you wanna suck my dick?" Lyons further cites various derogatory comments by Burchett. Additionally, Lyons indicates that inmate Jose Sabino[8] told Lyons that Hanshaw also ordered Sabino to inflict harm on Lyons. *Id.* Lyons does not claim any physical altercation with Sabino.

Lyons filed the instant Complaint on December 3, 2012. DE #1 (Complaint). Following initial screening and a discovery period, Defendants filed the instant motion on September 12, 2013, (DE #33) and Plaintiff sent in a 1-sentence letter on September 25, 2013. DE #34 (Letter). This was Lyons's **only** even arguable response to the dispositive motion.[9] Defendants subsequently replied. DE #37 (Reply). Defendants' motion is ripe for analysis.

---

[8] The Complaint references both a Jose Sabino and a Jose Sambino, though the Court perceives Lyons to reference only 1 individual. Thus, for purposes of consistency, the Court will refer to the inmate as Sabino, the spelling Lyons first uses. DE #1 (Complaint) at 2, 3 (referencing Jose Sabino); *id.* at 5 (referencing Jose Sambino). The record reflects that Defendants subpoenaed for deposition a Jose Sabino. DE #23 (Deposition notice with attached subpoena).

[9] Federal Rule of Civil Procedure 5 requires that any filing after the complaint be accompanied by a certificate of service. Fed. R. Civ. P. 5(d). Plaintiff's response letter did not include a certificate of service, *see* DE #34 (Letter), and thus is not a valid filing. In light of Plaintiff's *pro se* status, however, the Court has considered the letter in issuing this recommended disposition.

## II. Standards of Review

Although styled as a motion to dismiss, and substantively characterized as a motion to dismiss for failure to state a claim, the Court notes that Defendants filed their motion *after* answering Plaintiff's Complaint. DE #33 (September 12, 2013 Motion to Dismiss); DE #16 (February 8, 2013 Answer). Thus, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) would be untimely. *McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012) ("Defendants filed an untimely motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as it was filed after Defendants' Answer."). Federal Rule of Civil Procedure 12(h)(2)(B) allows, in relevant part, a party to raise a failure to state a claim "by a motion under Rule 12(c)," or a motion for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2)(B). The Court, in its discretion, thus construes Defendants' motion to dismiss as a motion for judgment on the pleadings. *Satkowiak v. Bay County Sheriff's Dept.,* 47 Fed. App'x 376, 377 n.1 (6th Cir. 2002) (describing as a "technical error" defendant's labeling of an untimely Rule 12(b)(6) motion as a motion to dismiss and noting that the motion should be labeled as one arising under Rule 12(c)). The Court's treatment of the motion in this regard does not affect the standard of review. *Jelovsek v. Bredesen,* 545 F.3d 431, 434 (6th Cir. 2008) ("The manner of review under [Fed. R. Civ. P.] 12(c) is the same as a review under Rule 12(b)(6)[.]").

Federal Rule of Civil Procure 12(c) permits a party to file for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to

judgment.'" *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). Accordingly, a court may only grant the motion when "'no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* (quoting *JPMorgan Chase Bank, N.A.,* 510 F.3d at 582).

Courts may not consider "matters outside the pleadings" when evaluating a Rule 12(c) motion. Fed. R. Civ. P. 12(d). "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Id.* Additionally, a court must permit the parties "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

Correspondingly, pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356; *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a

genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 106 S. Ct. at 2552. If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 2556 (citation omitted) (Brennan, J., dissenting); *see also Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that, when the movant also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it") (citation and internal quotation marks omitted).

A fact is "material" if the underlying substantive law identifies the fact as an essential element. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita*

*Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

**III.   Analysis**

   *1. Lyons's Complaint fails to state actionable claims for officer intimidation and verbal abuse against both Hanshaw and Burchett. Judgment as a matter of law is appropriate as to these claims.*

Defendants' primarily move for judgment on the pleadings, alleging that Lyons fails to state a sufficient claim under *Ashcraft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). DE #33-1 (Memorandum) at 3.  As Lyons is a *pro se* Plaintiff, the Court reads the Complaint to include all fairly and reasonably inferred claims. *Wagenknect v. United States*, 533 F.3d 412, 415 (6th Cir. 2008); *Haines v. Kerner*, 92 S. Ct. 594, 595-96 (1972) (per curiam). However, Plaintiff's Complaint must still "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see Garrett v. Belmon Co. Sherriff's Dep't*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. 2010) (applying *Iqbal* to a *pro se* § 1983 complaint). The charging document must suggest more than "the mere possibility of misconduct," *Iqbal*, 129 S. Ct. at 1950, and while

> . . . the pleading standard Rule 8 announces does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of a cause of action will not do." Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Id.* at 1949.

Lyons's Complaint expressly states three violations: "officer intimidation," "verbal abuse," and an "order executed to do bodily harm." DE #1 (Complaint) at 10. The

9

Court perceives Lyons as claiming officer intimidation/verbal abuse against Hanshaw relating to Hanshaw's alleged conduct (including verbal comments) toward Lyons while Lyons was hospitalized at King's Daughters Hospital and for Hanshaw's conduct at the detention center following Lyons's discharge. Specifically, Lyons alleges that, while he was hospitalized, Hanshaw made sexual or inappropriate remarks and engaged in personal conversation that offended Lyons. DE #1 (Complaint) at 7. Additionally, Plaintiff contends that, at some point following his hospital stay, Hanshaw forcibly removed Lyons from his cell and made comments about having Lyons sexually assaulted. Finally, Lyons alleges that Hanshaw covered his cell window and made general negative comments. *Id.* at 8.

Lyons's claims of officer intimidation here do not extend past alleged verbal abuse/harassment, which are not cognizable Eighth (or Fourteenth) Amendment violations under § 1983.[10] 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . "). The Eighth Amendment requires that a plaintiff allege punishments that "involve the unnecessary and wanton infliction of pain" or punishments "disproportionate to the crime

---

[10] Here, although Lyons evidently was, at filing, a pretrial detainee and thus protected by the Fourteenth Amendment, the Sixth Circuit "has analogized the rights to which detainees are entitled under the due process clause of the fourteenth amendment to those granted to prisoners under the eight amendment." *Estate of Adel-Hak v. City of Dearborn*, 872 F.2d 1023, at *2 (6th Cir. 1989) (table); *Herring v. Cnty. of Cuyahoga*, 960 F.2d 149 (6th Cir. 1992) (table) ("This court has held that the Eighth Amendment rights of prisoners are analogous to the Fourteenth Amendment due process rights of pretrial detainees. *Barber v. Salem,* 953 F.2d 232, 235 (6th Cir. 1992). Thus, courts have been guided by the standard for evaluating the treatment of prisoners and the conditions of prison under the Eighth Amendment when they have considered claims involving pretrial treatment and conditions." (citations omitted)).

committed." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Id.* "[H]arassment and verbal abuse . . .do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *see also Kee v. Louisville Metro Corrections*, No. 3:11-CV-P544-M, 2011 WL 6370372, at *4 (W.D. Ky. 2011) ("Although verbal abuse by prison officials is not condoned, the law is clear that even if the allegation of verbal abuse is true, verbal abuse by itself does not violate the Constitution.") (citing *Johnson*, *Ivey*). "Harassing or degrading language" by prison authorities, while "unprofessional and despicable," is not tantamount to a constitutional violation. *Talley v. Womack*, No. 1:12-CV-P208-M, 2013 WL 2018945 (W.D. Ky. May 13, 2013) (citations omitted). Again, Lyons only alleges that Hanshaw's comments at the hospital offended him and/or made him fearful. At no point does Lyons allege bodily harm or physical injury from the remarks. Absent physical injury, the claim in meritless. *Williams v. Gobles*, 211 F.3d 1271, at *2 (6th Cir. 2000) (table) (citing 42 U.S.C. § 1997e(e)). As to these claims, Hanshaw is entitled to judgment as a matter of law.

The Court also construes Lyons's allegations to include assertions of verbal abuse/officer intimidation against Burchett. Specifically, Lyons contends that, on November 14,[11] Burchett verbally abused/intimidated Lyons by entering his cell with mace and making threats and/or sexual remarks. DE #1 (Complaint) at 5. Lyons also recounts a specific incident in the jail cafeteria in which Burchett allegedly verbally insulted Lyons. Finally, Lyons argues that Burchett cursed at and threatened him. *Id.*

---

[11] Plaintiff's narrative recounting the November 14 events contains the only direct allegations against Burchett.

11

For the same reasons and under the same authority stated above, Lyons fails to state a constitutional violation. Again, Lyons only asserts *verbal* abuse/intimidation. He does not indicate that he suffered any physical injury from Burchett's actions on November 14. Absent allegations of corporeal harm, Lyons fails to state a claim upon which relief can be granted. Judgment on the pleadings is appropriate.

> 2. *Lyons's Complaint does state a cognizable claim against Hanshaw for allegedly ordering other inmates to inflict bodily harm upon him, and judgment on the pleadings is inappropriate.*

Lyons's third and final allegation is that Hanshaw ordered other inmates to cause Lyons bodily harm and that said order was executed by Cris Woodle, resulting in bodily harm to Lyons. DE #1 (Complaint) at 10. Specifically, Lyons alleges that, on November 11, Hanshaw directed inmate Cris Woodle to physically assault him. *Id.* at 3. Plaintiff indicates that Hanshaw directed officers to release cell 138 inmates into the recreation yard, and as the inmates entered the yard, Hanshaw engaged in conversation with Woodle. Per Lyons, after Hanshaw closed the door to the area, Woodle approached him and referenced Hanshaw. Following a verbal confrontation, Lyons contends that Woodle engaged Lyons in a fight, resulting in injury to Lyons's ribs, lip, and kidney. *Id.* Woodle also allegedly threatened to kill Lyons if Lyons gave Hanshaw further problems. *Id.* Lyons indicates that, post-incident, he reported the fight to Captain Guzman. Guzman allegedly informed Lyons that he need not pursue any claim due to a lack of audio corroboration. *Id.* at 4.[12]

---

[12] Lyons states that, at some point, Hanshaw directed inmate Jose Sabino to hurt Lyons during a visitation in which both Lyons and Sabino participated. DE #1 (Complaint) at 5. The timing of this alleged order is unclear, although Lyons does not cite any physical injury resulting from Hanshaw's alleged actions. Indeed, Lyons notes only that the Woodle attack was successful. *Id.* at 2.

12

Considering Lyons's *pro se* status, and giving his Complaint a very generous construction, the Court does find that Lyons alleges sufficient facts to implicate Hanshaw's involvement in arranging the attack. Lyons (who again, has offered only his allegations in the case) contends that seven inmates would testify that, immediately prior to the incident, Hanshaw visited cell 138 and initiated "the hit" on Lyons. Hanshaw allegedly queried the cell 138 inmates for volunteers to injure Lyons and subsequently asked Deputy Metzer to release the cell 138 inmates into the yard (Lyons's location). Hanshaw then conversed with Woodle, immediately after which Woodle confronted Lyons, stating: "Why you fucking with my homeboy Hanshaw?" Woodle then began fighting, and Lyons sustained the described injuries. Woodle followed up the beating with a threat, related to Hanshaw.

Although a close call, the Court does find that Lyons alleges facts that are "sufficiently clear that [Hanshaw] is not left guessing as to what alleged conduct gives rise to the asserted claim or the injury which provides the basis for recovery." *Sallee v. Meyers*, 2010 WL 2305731, at *2 (E.D. Ky. 2010). The Court notes the temporal proximity of the Hanshaw-Woodle conversation relative to the fight, and the allegations about Hanshaw seeking volunteers in cell 138. Although Plaintiff offers no explanation for Hanshaw's supposed motivation for ordering one or more inmates to attack Lyons, and he further does not state his knowledge base for Hanshaw's alleged questioning of the cell 138 inmates, he does identify 7 witnesses to the alleged conversation.[13] Because the Court is crediting allegations in this context, Lyons's Complaint passes muster. On

---

[13] Lyons asserts that he attached a statement from "Mr. McGrew" that would supposedly corroborate his allegation that Hanshaw asked someone in cell 138 to hurt Lyons. DE #1 (Complaint) at 3. No such statement is in the record.

13

this record, which indicates a conversation between Hanshaw and Woodle immediately prior to Woodle's attack, two comments by Woodle specifically referencing Hanshaw, and the stated physical injury, the Court finds that judgment on the pleadings, as to this claim only, is not appropriate. A coordinated assault by the operative of a guard would state a potential claim.[14]

> 3. *The District Court should grant Defendant Hanshaw's motion for summary judgment on the sole remaining allegation. Lyons did not exhaust the claim.*

Defendants alternatively move for summary judgment, alleging that Lyons did not exhaust his claims.[15] DE #33-1 (Memorandum) at 4-6. Section 1997e(a) states: "No

---

[14] "In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates." *Taylor v. Little*, 58 Fed. App'x 66, 67 (6th Cir. 2003) (citing *Farmer v. Brennan*, 114 S. Ct. 1970 (1994)). Prison officials must not act with "deliberate indifference" to the serious needs of prisoners. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). Liability for a constitutional violation attaches when a plaintiff proves that "'the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Gordon v. Joyner*, No. 3:08-CV-P667-H, 2009 WL 176186, at *5 (W.D. Ky. June 22, 2009) (quoting *Farmer*, 114 S. Ct. at 1979). Thus, a guard that fails to prevent one inmate from stabbing another, despite having the opportunity to prevent such an attack, may be liable under the Eighth Amendment. *Walker,* 917 F.2d at 1453; *see also McNeal v. Shelby Cnty. Sheriff*, 991 F.2d 795 (6th Cir. 1993) (table) ("In the instant case, the sheriff's failure to supervise and control his subordinates' actions in striking the plaintiff inmate in his presence demonstrates a deliberate indifference, *almost a tacit authorization*, of the beating sufficient to incur [§ 1983] liability." (emphasis added)). Additionally, an inmate can state a viable Eighth Amendment claim for excessive force. *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 512 (6th Cir. 2001). The Court thus infers that a claim of violence organized by a guard against an inmate, resulting in sufficient harm, would be a cognizable Eighth Amendment violation. *Cf. Westmoreland v. Brown*, 883 F. Supp. 67, 77-80 (E.D. Va. 1995) (denying plaintiff's claim of strict liability against sheriff when individual guard orchestrated attack against inmate).

[15] Defendants also move for summary judgment on Lyons's claims of alleged abusive or intimidating comments. DE #33-1 (Memorandum) at 6-7. The Court has already found that judgment as a matter of law is appropriate on those allegations. Finally, Defendants seek summary judgment to the extent any claim against Burchett hinges on his supervisory capacity of Hanshaw. *Id.* at 7. Although the Court does not construe Lyons's

action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is mandatory, and applies to suits with respect to prison conditions regardless of the type of relief sought." *Vandiver v. Correctional Med. Servs. Inc.,* 326 Fed. App'x 885, 888 (6th Cir. 2009) (citations omitted). Failure to exhaust under § 1997e(a) is "an affirmative defense on which the defendant bears the burden of proof." *Id.* (citing *Jones v. Brock*, 127 S. Ct. 910, 922-23 (2007)). Exhaustion requires a prisoner to file a grievance and then appeal any denial of said complaint "'to the highest possible administrative level.'" *Harrell v. Southern Health Partners,* No. 4:10-CV-P21-M, 2011 WL 9296, at *2 (W.D. Ky. Jan. 3, 2011) (quoting *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1999)).

Contrary to Lyons's Complaint, the Boyd County Detention Center does have a grievance policy. *See* DE #1 (Complaint) at 14 (denying that the jail has a grievance policy). The policy states:

> Any inmate shall be allowed to file a grievance at such time as the inmate believes he or she has been subject to abuse, harassment, abridgement of civil rights, or denied privileges specified in the posted rules. (Grievances must be restricted to incidents, which occur while the prisoner is in custody of the facility). No prisoner shall fear against reprisal for initiating grievance procedure in an attempt to resolve legitimate complaints.

---

Complaint as imputing liability against Burchett, the Court agrees that, on this record, Burchett would not be liable under *respondeat superior*. Lyons does not allege that Burchett directly participated in any of the acts Hanshaw allegedly perpetrated nor does he assert that Burchett ratified any of the alleged acts. *Monell v. Dep't of Social Servs.,* 98 S. Ct. 2018, 2037-38 (1978); *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) ("'Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability.'" (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005))).

15

DE #33-3 (Grievance Policy) at 7; *see also* DE #33-3 (Jurta Aff.) at 1-2 (confirming grievance policy). The procedure requires the complaining inmate to submit to the jailer a "written statement" in a sealed envelope "promptly following the incident." DE #33-3 (Grievance Policy) at 7. The grievance must indicate the time, date, name of involved jail officials/staff members, and pertinent factual details (to include witnesses). *Id.*

In support of their non-exhaustion claim, Defendants submit an affidavit from Tom Jurta, Chief Deputy Jailer, and all submitted grievance documents pertaining to Lyons. Jurta avers that the detention center issued grievance forms to Lyons only on January 9, 2013, and January 21, 2013. DE #33-3 (Jurta Aff.) at 1, ¶ 5. Lyons returned the former on January 10, 2013 and did not submit the latter. *Id.* at ¶¶ 6-7. As to the January 9 grievance, Lyons complained about time in isolation. *Id.* at ¶ 6. Per Jurta, "Lyons never filed any grievances, or even a general request form, regarding any of the allegations in his Complaint[.]" *Id.* at ¶ 8

The Grievance Register, in part, reflects that Lyons submitted a grievance on January 10, 2013, and although he requested a second grievance form related to "staff problems," Lyons told officers sent to retrieve the form that he "threw it in the trash [and] did not want to turn it in." DE #33-3 (Grievance Log Entry).

Defendants raised the failure to exhaust defense by way of motion. This is an affirmative defense, per *Jones*. As already noted, Lyons made no substantive response of any type to the motion, and the Court is entitled to consider Defendants' supported arguments "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

The Court has considered whether the Complaint itself is alone adequate to forestall dismissal. Lyons's assertions were directly contradictory as to exhaustion, first

claiming there was no grievance system, (DE #1 (Complaint) at 14), but then claiming to have filed a grievance. *Id.* He asserted denial of forms or form access and yet conceded being given writing materials. *Id.*; *see also id.* at 6 (Officer . . . allowed me a pencil and paper to file grievance.").

Because Plaintiff did not respond, the jail's verified assertions regarding its records stand unopposed. Lyons has not explained or addressed why the system would log January 2013 papers but not those from November or December of 2012. He also does not supply the chronology, persons, or facts regarding his alleged administrative compliance or his failure to follow the prescribed grievance process. Though given the opportunity to respond, Lyons elected against, thus leaving without rejoinder the verified history from the defense perspective.

Because the exhaustion details are unopposed, the Court recommends dismissal on the motion presented.

## IV.    Conclusion

For the reasons discussed above, the Court **RECOMMENDS** the District Judge:

(1) **CONSTRUE** Defendants' motion to dismiss (DE #33) as a motion for judgment on the pleadings;

(2) **GRANT IN PART** Defendants' motion for judgment on the pleadings and **DISMISS WITH PREJUDICE** Lyons's claims of verbal abuse and officer intimidation (DE #33); and

(3) **DENY** Defendants' motion for judgment on the pleadings as to Lyons's allegation that Hanshaw ordered another inmate to attack him (DE #33) but **GRANT** Defendants' motion for summary judgment on the same claim and

**DISMISS** the claim **WITHOUT PREJUDICE** for failure to exhaust (DE #33).

* * * * *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. As defined by section 636(b)(1) and Rule 72(b), within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 72(b) normally waives a party's right to review. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 27th day of May, 2014.

Signed By:
Robert E. Wier  REW
United States Magistrate Judge